UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No.: 3:12-CR-137-TAV-HBG |
|  | ) |  |
| JACKIE MIZE, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant's pro se motion for compassionate release [Doc. 208]. The United States has filed a response [Doc. 215], defense counsel[1] has filed a reply [Doc. 220], and the government has filed a sur-reply [Doc. 223]. This matter is ripe for adjudication. For the reasons set forth more fully below, defendant's motion will be **GRANTED**.

**I.     Background**

On October 2, 2012, defendant was indicted on one count of conspiracy to distribute and possess with intent to distribute oxycodone in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h) [Doc. 3]. Defendant proceeded to trial and was found guilty on both counts [Doc. 63]. Defendant was sentenced to 360 months'

---

[1] Federal Defender Services of East Tennessee filed a motion seeking the appointment of a special panel attorney to assist defendant with his motion for compassionate release pursuant to Standing Order 21-09, which the Court granted [Docs. 217, 218].

imprisonment, to be followed by three years of supervised release [Doc. 103]. On appeal, the Sixth Circuit reversed and vacated defendant's conviction and remanded the case for a new trial [Doc. 132]. Defendant subsequently pleaded guilty to both counts [Docs. 153, 156], and was resentenced to 120 months' imprisonment and three years of supervised release [Doc. 188].

Defendant is currently on home confinement, supervised out of RRM Nashville, and is scheduled for release from the Bureau of Prisons' custody on December 12, 2021. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 30, 2021). Defendant is 72 years old and suffers from, among other ailments, hypertension, COPD, black lung disease[2], and prediabetes [Doc. 216, pp.48-49].

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a

---

[2] Black lung disease, more formally known as coal worker's pneumoconiosis, is a disease of the lungs caused by inhalation of certain particulates, such as coal mine dust, which can lead to "lung impairment, disability, and premature death." Pneumoconioses, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/niosh/topics/pneumoconioses/default.html.

defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*.

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine

3

> whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, as no policy statement applies to defendant-filed motions for compassionate release, the second requirement plays no role. *Id.*

## III. Analysis

### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

4

The United States concedes that the exhaustion requirement has been met [Doc. 215]. Thus, the Court may consider the merits of defendant's request.

### B.     Whether Extraordinary and Compelling Reasons Justify Relief

The exhaustion requirement having been satisfied, the Court must next consider whether a sentence reduction is warranted by "extraordinary and compelling reasons." Because defendant moves for compassionate release on his own behalf, the policy statement set forth in section 1B1.13 of the Federal Sentencing Guidelines is "inapplicable," and "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Defendant contends that his multiple serious medical conditions, including, but not limited to, COPD, hypertension, prediabetes, and black lung disease, coupled with his increased risk from COVID-19, constitute extraordinary and compelling reasons. Courts may rely on CDC guidance when considering a motion for compassionate release. *Elias*, 984 F.3d at 521 ("Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions."). The CDC states that COPD and possibly

5

hypertension, "can make you more likely to get severely ill from COVID-19." People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Similarly, the CDC, through its suborganization, the National Institute for Occupational Safety and Health, has identified black lung disease as placing "you at a higher risk of severe illness from COVID-19." Coal Workers' Health Surveillance Program, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/niosh/topics/cwhsp/default.html. In addition, the Court notes that defendant is 72 years of age. In discussing how COVID-19 affects the elderly, the CDC has noted that "[o]lder adults are more likely to get very sick from COVID-19. Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die. The risk increases for people in their 50s and increases in 60s, 70s, and 80s." COVID-19 Risks and vaccine Information for Older Adults, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/aging/covid19/covid19-older-adults.html.

Based on all of the above, it is clear that defendant suffers from multiple conditions which place him at an increased risk if he should contract COVID-19. Furthermore, defendant has submitted a report from a licensed registered nurse discussing defendant's various medical conditions and how those conditions affect the risk defendant faces from COVID-19 [Doc. 225]. In that report, the medical practitioner opines, among other things, that defendant should "stay as active as possible and exercise regularly" [*Id*. at p. 2].

6

The Court's analysis in this case is complicated by the fact that defendant has been placed on home confinement, and thus does not face the same risk from COVID-19 as he would if he were still confined in a Bureau of Prisons' facility. However, there is no question that defendant suffers from multiple, serious medical conditions, is of advanced age, and faces an increased risk from COVID-19. Defendant is on home confinement, but the conditions of home confinement are necessarily more restrictive than those of someone who is on supervised release and may interfere with defendant's ability to "stay as active as possible and exercise regularly" [*Id.*] In addition, COVID-19 is not the sole risk defendant faces. Given defendant's advanced age and the fact that he suffers from both COPD and black lung disease, defendant is at a heightened risk from other respiratory infections, such as the common cold, influenza, and pneumonia [Doc. 225, pp. 2-3]. It is also clear that defendant's blood pressure has remained elevated while in the custody of the Bureau of Prisons [*Id.* at pp. 3-4].

In addition, the Court notes that while defendant is currently on home confinement, there is no guarantee that he will remain so. The decision whether to place a defendant on home confinement rests solely with the Bureau of Prisons. Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020); *United States v. Coker*, No. 3:14-CR-085, 2020 U.S. Dist. LEXIS 66286, 2020 WL 1877800, at *2 (E.D. Tenn. Apr. 15, 2020); *see United States v. Read-Forbes*, 454 F. Supp. 3d 1113, 1118 (D. Kan. 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction

7

to order home detention under this provision." (citing *United States v. Engleson*, No. 13-CR-340-3(RJS), 2020 U.S. Dist. LEXIS 65551, 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020))). Just as the Bureau of Prisons has the authority to place a defendant on home confinement, it also has the authority to revoke that privilege. Thus, the mere fact that defendant has been placed on home confinement does not moot his motion for compassionate release. Given the ongoing uncertainty over whether defendant will be allowed to remain on home confinement for the remainder of his sentence, and given defendant's other medical conditions, the stress caused by such concerns is likely to exacerbate defendant's hypertension, if nothing else.

Based on all of the above, in light of the serious nature of the defendant's multiple medical conditions, which include two serious respiratory illnesses, and his advanced age, coupled with his increased risk of severe illness from COVID-19 as well as other respiratory diseases, the Court finds that defendant has established the extraordinary and compelling reasons needed for compassionate release.

### C. § 3553(a) factors

At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in

§ 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491.

Turning to the relevant factors, the Court begins with the nature and circumstances of the offense. Defendant pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute oxycodone, as well as one count of money laundering [Doc. 153]. This case involved a large quantitate of oxycodone, 77,760 tablets, and was a very serious offense [Doc. 166, ¶ 12].

Defendant's criminal history includes convictions for promoting gambling, second degree wanton endangerment, fourth degree aggravated assault (all three of which date back to 1993), as well as a DUI conviction and a simple possession conviction which date back to 1999 [*Id.*, ¶¶ 34-38].

With respect to his behavior while in prison, defendant has no record of disciplinary infractions while in the custody of the Bureau of Prisons, and completed his GED [Doc. 215, p. 10]. Defendant has also maintained employment while in the custody of the Bureau of Prisons [Doc. 208, p. 2]. Furthermore, the Court notes that defendant has been placed on home confinement under the CARES Act. That fact is relevant to the Court's

9

analysis herein and speaks to a lessened need to protect the public from future crimes by the defendant, as well as a lack of danger to the public if he were released.

Defendant is scheduled for release on December 12, 2021, a little over three months from now. Defendant has served around vast majority of his sentence of imprisonment. The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this instance, given that defendant has served almost the entirety of his sentence, coupled with the analysis set forth above, the Court finds that the amount of time defendant has left to serve weighs in favor of compassionate release.

Having considered the § 3553(a) factors relevant to this case, as well as the record as a whole, the Court finds that the factors weigh in favor of granting defendant's request for compassionate release. Specifically, the Court finds that reducing defendant's sentence to one of time served (a reduction of approximately three months) will result in a sentence which is sufficient, but not greater than necessary, to achieve the goals Congress has identified in both sections 3553(a) and 3582(c)(1)(A). The Court finds that a sentence of time served still reflects, among other things, the seriousness of defendant's offense, provides just punishment, and provides adequate deterrence. The Court does not reach this decision lightly, and the Court's decision in no way minimizes the serious nature of drug

trafficking offenses in general, or the ongoing opioid crisis this country faces. However, based on the record before the Court, the Court determines that compassionate release is warranted in this case.

## IV. Conclusion

Accordingly, for the reasons set forth more fully above, defendant's motion [Doc. 208] is hereby **GRANTED**. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) the defendant's sentence of 120 months of imprisonment is reduced to **time served**. The previously ordered terms of supervised release shall remain in effect [Doc. 188]. This Order will be **STAYED <u>for up to three (3) days</u>** to allow the Bureau of Prisons time to process the Order. Given that defendant is already under home confinement, it does not appear that a period of quarantine will be required. If additional time will be needed to effectuate the Order, counsel for the parties should advise chambers.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE